UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| EUGENA W.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CIVIL NO. 1:20cv274 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Act and for Supplemental Security Income (SSI) under Title XVI of the Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not been engaged in substantial gainful activity since January 11, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: major depressive disorder/depression/mood disorder/bipolar disorder, anxiety, personality disorder, learning disorder, obesity, migraines, and seizures/pseudoseizures (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 320 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1420(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant should avoid work within close proximity to open and exposed heights, open and dangerous machinery, such as open flames and fast-moving exposed blades. The claimant should avoid work involving concentrated exposure to vibration, such as using heavy sanders. The claimant should not ascend or descend ropes, ladders, or scaffolds. The claimant is limited from concentrated exposure to excessive airborne particulate, dusts, fumes, gases, excessive heat, humidity, and cold, such as when working outside or within a sawmill, a boiler room, a chemical plant, a green house, a refrigerator, or a sewage plant. The claimant should avoid work within close proximity to very loud noises (level 5), such as a fire alarm, or very bright flashing lights, such as a strobe, more than occasionally. The claimant is limited to tasks involving simple instructions, defined as tasks and instructions that can be learned through short demonstration, or when beyond short demonstration, up to and including one month, or in other words, SVP levels of 1 and 2. Work should not involve more than elementary reading and mathematics. The claimant is limited to work within a low-stress job defined as requiring only occasional decision-making, only occasional changes in the work setting. The claimant can meet production requirements in an environment that allows her to sustain a flexible and goal-oriented pace. The claimant is limited from fast-paced work, such as assembly line production work with strict productivity requirements. It is best that work not involve close scrutiny or frequent critical supervision regarding production rates. The individual should not be exposed to sudden or unpredictable workplace changes in terms of use of work tools, work processes, or work settings, and if there are workplace changes, they are infrequent, introduced gradually, and the type of changes should be easily explained to the claimant. When faced with such a

      work environment and type of tasks, the claimant can remember the associated work-like procedures. The claimant can maintain the focus, the persistence, the concentration, the pace, and attention required to engage in such tasks for two-hour increments, eight-hour workdays and within the confines of normal work breaks and lunch periods. The claimant is limited to superficial interaction with coworkers and supervisors, and should avoid interaction with the general public. Superficial interaction is defined as occasional and casual contact not involving prolonged conversation. Contact with supervisors would still involve necessary instruction. Prolonged conversation is not needed for task completion, and the claimant is best suited to work in an environment that does not require tandem shoulder-to-shoulder work activity.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 26, 1980, and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 11, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 783-806).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on August 13, 2021. On September 24, 2021 the

defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on October 5, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

Plaintiff was found not disabled in two prior decisions dated November 16, 2015 (Tr. 18-43), and November 21, 2018 (Tr. 884-914). Plaintiff appealed the 2015 hearing decision, which was remanded by agreement to the agency for further proceedings in October 2018. (Tr. 883). Meanwhile, in January 2017, Plaintiff filed a separate application for DIB and SSI (Tr. 887), and an ALJ found her not disabled in a hearing decision dated November 21, 2018 (Tr. 884-914).

In April 2019, the Appeals Council sent Plaintiff's case back to an ALJ with instructions to

5

consolidate her separate claims, consider new evidence and further evaluate the record, and issue a new decision (Tr. 921-24).

In a decision dated April 7, 2020, the ALJ found Plaintiff was not disabled, as defined in the Social Security Act, from January 11, 2014, the alleged onset date of disability, through April 7, 2020, the date of the hearing decision (Tr. 777-815). Plaintiff did not submit written exceptions to the Appeals Council, and the Appeals Council did not assume jurisdiction, thereby rendering the April 26, 2018 decision the Agency's final decision for purposes of judicial review. 20 C.F.R. §§ 404.984(d), 416.1484(d). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Plaintiff was born on August 26, 1980. (Tr. 50). She was divorced in 2006 and has 3 children. *Id*. She graduated from high school, with the assistance of special education. (Tr. 52, 1470). Plaintiff's most recent employment was in 2014 as a pizza delivery driver. (Tr. 54). Prior to that, in 2014, she had a series of jobs in factories, none of which lasted for more than a month. (Tr. 56-57). In 2013, Plaintiff worked at Charleston Metal Products, and before that with Manpower of Lansing, Contact Castings, and Elwood Staffing. (Tr. 61-62). Plaintiff's longest employment was as a lab technician at Coopers for 2 years between 2008-2009. (Tr. 63, 558). She was let go from that role when the position was eliminated. *Id*.

Plaintiff alleges she suffers from a variety of both mental and physical conditions including major depressive disorder, generalized anxiety disorder, bipolar disorder, obsessive-compulsive disorder, post-traumatic stress disorder, gastroesophageal reflux disease, cholelithiasis, chronic gastritis, personality disorder, borderline intellectual functioning (intellectual developmental disorder), mild levocurvature with the apex centered at Tl2-Ll, mild dependent fluid in the dorsal subcutaneous tissues throughout the lumbar region, shallow left foraminal disc protrusion at

6

L1-L2, mild disc desiccation without significant loss of disc height, mild flattening of the posterior annulus and small left foraminal annular tear, mild associated rostrocaudal facet arthropathy causing mild left-sided neural foraminal narrowing and mild right-sided neural foraminal encroachment, possible mild abutment of the exiting left L4 nerve root at L4-L5, left sided low back pain with left-sided sciatica, acute hyperventilation syndrome, mild obstructive sleep apnea, muscle spasms of both lower extremities, seizures, hypersomnia, hypercholesterolemia, migraines, restless leg syndrome, herniation of nucleus pulposus, absent seizures, chronic headache disorder, and mood disorder.

Plaintiff is on Tizanidine for muscle spasms and pain, and Vimpat and Lamictal for seizures. (Tr. 1353). She is on Xanax, Neurontin (Gabapentin), Seroquel, Vistaril, Prozac, Ranitidine, Nexium, and Imitrex for mental health issues. (Tr. 2380). Plaintiff is also on Topomax for her migraines. (Tr. 1371). She has had a tubal litigation, gallbladder removal, endometrial ablation, and multiple tooth extractions. (Tr. 2523, 1134, 1199).

In support of remand, Plaintiff first argues that the ALJ failed to include all of the supported limitations into the mental RFC. Plaintiff has been seeking mental health treatment since 2010. (Tr. 552). In 2010 she voluntarily admitted herself for inpatient hospitalization at Northeastern Center stating she was "having a nervous breakdown." *Id*. She was diagnosed with severe depression, anxiety, panic attacks, and hallucinations. *Id*. Plaintiff has had issues with cutting and suicidal thoughts and has been on a variety of medications. (Tr. 704). Her history of cutting started at the age of 29. (Tr. 2380). At the most recent 2018 hearing the ALJ questioned Plaintiff's cutting, seemingly doubting the authenticity. The ALJ appeared to be insinuating that Plaintiff cut herself purposefully before the hearing, implying she did so in preparation for the

7

impending hearing rather than as a result of her many mental illnesses. Plaintiff notes, however, that as the record indicates, Plaintiff's cutting issues started long before the hearing. (Tr. 704).

Plaintiff has been evaluated by Northeastern Center as having obsessions, visual hallucinations, below average fund of knowledge, and poor judgment, insight, attention, and concentration. (Tr. 3284). She testified at the hearing that she sees shadows and spirits that sometimes irritate her. (Tr. 844). She further testified that her father sees them as well stating, "My dad says that's what keeps me from doing stuff, because they are evil spirits." *Id*.

Plaintiff contends that the ALJ failed to properly account for her pseudoseizures and improperly dismissed evidence. The ALJ discussed Plaintiff's MRI and EEG, as well as her seizure symptoms. (Tr. 792). After the 2017 EEG, Dr. Haller assessed "During photic stimulation the patient had a typical spell staring off to the left and becoming unresponsive. This spell was not associated with any epileptiform discharges. This would be consistent with non-epileptic, pseudoseizures. (Tr. 2631). Dr. Collins, Plaintiff's neurologist at the time, treated Plaintiff for the pseudoseizures from 2017-2018. (Tr. 1899-2608). Dr. Collins prescribed Plaintiff a variety of seizure medications including Lamictal, Neurontin (Gabapentin), Zanaflex, and Vimpat. (Tr. 792). The ALJ acknowledges Dr. Collins's diagnosis of pseudoseizures, but then goes on to diminish the significance of the diagnosis by pointing out that though Plaintiff was reporting staring episodes and periods of loss memory, her neurological examinations were continually "grossly intact" and her "gait remained normal," while failing to consider the seizure as a psychological condition. *Id*.

The ALJ also takes issue with the fact that treatment notes, prior to the 2017 pseudoseizure diagnosis, do not show any complaints of seizures. (Tr. 793). The ALJ questioned Plaintiff about this at the hearing. (Tr. 823). Plaintiff stated that she did not realize they were

8

seizures until she was diagnosed. *Id*. The ALJ also found it "significant" that Plaintiff was discharged by her neurologist due to three "no shows." (Tr. 793). However, the ALJ failed to articulate why this was of significance. Plaintiff's primary care physician notes she was discharged "due to her having problems with her memory, due to her seizures, and her forgetting about appointments." (Tr. 1346). The record further states that when Plaintiff was discharged from her neurologist, they gave her 30 days' worth of medications. *Id*. Once she ran out of medication Plaintiff was having "spells," "spasms" and periods of forgetfulness, so she went to her primary care physician who stated they were going to get her a referral for a new neurologist. (Tr.1346). The ALJ acknowledged Plaintiff's pseudoseizures as "severe" but states that the RFC accounts for seizure precautions by precluding extreme climbing and exposure to hazards. (Tr. 793). However, the ALJ failed to consider the seizures as a psychological condition when assigning the RFC.

This Court agrees with Plaintiff that remand is warranted so that the ALJ can properly consider the pseudoseizures as a mental impairment, which should be addressed as such in the RFC.

Next, Plaintiff argues that the ALJ erred when allocating weight to the physician opinions. Dr. O'Brien was previously Plaintiff's primary care physician and his opinion was given "great weight" by the ALJ. As noted by the Appeals Council and the ALJ, Dr. O'Brien is not a mental health professional. (Tr. 801, 922). In 2014, Dr. O'Brien completed a questionnaire titled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." (Tr. 547). This questionnaire was given "great weight" by both this ALJ opinion, and the ALJ opinion from 2018, which the Appeals Council remanded. In 2018, the Appeals Council stated, "O'Brien is not a mental health specialist, and though he is the treating physician he had not treated claimant for

9

over a year when the opinion was provided." (Tr. 922). In the current opinion, the ALJ acknowledged this finding and states that, "The current Administrative Law Judge agrees that Dr. O'Brien's opinion is entitled to significant weight and finds it persuasive as it is consistent with his objective findings, and the employer report. That does not mean that his findings in terms of no limits are adopted. Rather, this opinion lends support to a capacity for some work-related activities, despite mental impairments." (Tr. 801). However, the ALJ does not address the fact that Dr. O'Brien is not a mental health expert, nor the fact that he had not seen Plaintiff in over a year when filling out the questionnaire. Additionally, the ALJ's opinion is in 2019, and the questionnaire was from 2014. (Tr. 801, 549). Also, the questionnaire has no actual written opinions. (Tr. 547-50). It is a series of dash marks through boxes with a heading of "none." *Id*. No responses are given under the questions that ask the physician what medical/clinical findings support the assessment. *Id*. The ALJ found moderate limitations in all Paragraph "B" areas, yet according to Dr. O'Brien's check boxes, he found "none" in every area; but yet the ALJ found Dr. O'Brien's opinion should be given "significant weight." (Tr. 788-89, 801). Clearly, just as the Appeals Council found the original 2018 ALJ opinion on this issue contradictory, this ALJ opinion is also contradictory with regards to the limitations found and the "significant weight" given to Dr. O'Brien's opinion. (Tr. 921-22).

Furthermore, Dr. O'Brien's opinions are inconsistent with themselves throughout the record. At the end of 2013 Dr. O'Brien stated, "True panic attacks apparently do not occur," and then in 2015 Dr. O'Brien stated "True panic attacks occur in addition to generalized anxiety." (Tr. 425, 617). This inconsistency places the reliability of the questionnaire in doubt. Also, in 2018 Plaintiff went to the ER due to a sudden onset anxious feeling and a swelling in the back of her

10

throat, she was diagnosed with having a panic attack and acute hyperventilation syndrome. (Tr.1203). In 2012, two years before the alleged onset date, Plaintiff complained to Dr. O'Brien that her anxiety had gotten worse recently, that she had had it for about 7-8 years, and that she "freaks out" and overreacts about everything. (Tr. 2022). In 2012, Plaintiff complained of memory issues, but declined "any more medicine," because she had difficulty remembering the medicine she was already on. (Tr. 2024). Dr. O'Brien's inconsistent notes pose a major question regarding the reliability of the questionnaire. Thus, substantial evidence does not support the ALJ's decision to place "great weight" on Dr. O'Brien's questionnaire, and remand is required on this point.

The ALJ next discusses Dr. Boen's opinion. (Tr. 801). Dr. Boen is a state agency consultative psychologist. (Tr. 2146-49). Dr. Boen opined,

> The claimant would have difficulty understanding what they are asked to do on a job. They would have trouble remembering what they are asked to do on a job. The claimant would have trouble concentrating on the job. They would have trouble being able to stay on task. The claimant would not be able to get along with their coworkers. They would have trouble being able to get along with their boss.

(Tr. 2149).

The ALJ, like the previous ALJ opinion, gave this opinion "less weight." (Tr. 802). The ALJ noted that the Appeals Council remanded previously on this issue as well. *Id*. The previous ALJ opinion also gave Dr. Boen's opinion "little weight," citing the same reasons as the current ALJ, that the opinion was inconsistent with itself. (Tr. 923). The Appeals Council has already addressed this issue in their opinion. (Tr. 923). They stated, "The Appeals Council notes that Dr. Boen's opinions are not necessarily inconsistent with his examination findings. Dr. Boen's opinions that the claimant would have difficulty understanding what they are asked to do on a job, trouble remembering what they are asked to do on a job, trouble concentrating on a job, and trouble being

11

asked to stay on task appear somewhat supported by the objective findings noted." (Tr. 923). This Court finds that remand is required on this issue so that the ALJ can properly consider all of the items regarding Dr. Boen's opinion that were addressed by the Appeals Council.

Next, Plaintiff argues that the ALJ erred when disregarding the GAF scores given to her. The ALJ assigned "little weight" to the GAF scores given ranging from 35-55. (Tr. 802). The ALJ then spends considerable time explaining why GAF scores are unreliable, citing the Sixth Circuit for support. *Id*. However, the Seventh Circuit has stated that though low GAF scores alone are insufficient to overturn an ALJ's no-disability finding, GAF scores in context can reveal an ALJ's "deficient consideration of entirety of claimant's evidence." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014)(quoting *Bates v. Colvin*, 736 F.3d, 1093, 1100 (7th Cir. 2013)). Here, the ALJ gives very little consideration to Plaintiff's GAF scores, and instead discounts the entire idea of GAF scores. However, just as in *Yurt*, Plaintiff's low GAF scores provide support for the diagnosis of "Intellectual Developmental Disorder and Borderline IQ" with the corresponding symptoms and limitations, which are noted and present throughout the record. (Tr.1473).

In the opinion the ALJ states "A. Recinto, M.D., diagnosed major depressive disorder and personality disorder. In addition, he noted borderline intellectual functioning 'By history;' however, this was not based upon I.Q. testing, and it is inconsistent with the claimant's subsequent enrollment in, and doing well in, an online photography course." (Tr.797). The ALJ then goes on to state that Dr. Recinto gave Plaintiff a GAF of only 45, which the ALJ believed was based only on Plaintiff's "reported" symptoms. *Id*. However, Plaintiff testified that it took her two years to get her photography certificate because she kept failing the courses and had to retake them. (Tr.828). This is far from "doing well," in the course as the ALJ states. Plaintiff additionally

12

testified that her stepmother helped her considerably in the course, reading through the material and explaining to Plaintiff what needed to be done. (Tr. 840). Thus, on remand, the ALJ should reconsider evidence of Plaintiff's GAF scores and whether they are consistent with the record and support Plaintiff's claims of borderline intellectual functioning.

Next, Plaintiff argues that the mental RFC should have more limitations with respect to Plaintiff's interactions with people. In the Paragraph B analysis, the ALJ gave Plaintiff a "moderate limitation" in "interacting with others." (Tr. 788). As support, the ALJ stated that Plaintiff has been capable of "interacting appropriately with numerous sources, and in both routine and emergent settings, throughout the period." *Id*. The ALJ went on to say that Plaintiff may "prefer" to limit her interactions with others, but that nothing in the record precluded her from workplace interactions. *Id*. The ALJ then continued to give Plaintiff a mental RFC which included, "The claimant is limited to superficial interaction with coworkers and supervisors, and should avoid interaction with the general public. Superficial interaction is defined as occasional and casual contact not involving prolonged conversation. Contact with supervisors would still involve necessary instruction. Prolonged conversation is not needed for task completion, and the claimant is best suited to work in an environment that does not require tandem shoulder-to-shoulder work activity." (Tr. 790).

At the hearing when the ALJ asked Plaintiff why one of her jobs ended, she responded that people were mean to her so she told them to "stick it up their rear." (Tr. 851). She continued to state, "Sometimes I went in there [the bathroom] and stood because people made me mad and I didn't want to be around them." (Tr. 852). Nearly every mental health record indicates Plaintiff has anger issues . In 2019 Northeastern Center stated, "She presents with an extremely chronic history

13

of affective instability. Psychotic vulnerability, incidents of decontrolled anger. She has had multiple input and output interventions while living in Ohio prior to moving to Indiana and using the NEC care system beginning with IPU hospitalization in 2010 during her divorce process." (Tr. 1473). Northeastern Center further stated that Plaintiff mentioned she has road rage, is snappy, and screams at people that walk in her path. (Tr. 1469). A psychiatric evaluation done by Northeastern Center stated, "Individual reports having had thoughts of harming others," further stating she wanted to beat up her cousin's wife. (Tr. 2492). In 2015 Northeastern Center reported that Plaintiff stated sometimes she'd like to just "punch someone until they bleed." (Tr. 2720). In his 2014 evaluation Dr. Boen stated "She [Plaintiff] has felt unusually angry and has learned she has to walk away before she hurts someone." (Tr. 2147). She has been fired due to her attitude. She often feels if she does not quit she will get fired due to "knocking someone out or my mouth." *Id*. In fact Plaintiff's last employment, as a part-time pizza delivery driver, ended because she was unable to get along with co-workers and would constantly scream and fight with them. (Tr. 54-55). In 2014 Plaintiff attempted work at five different employers, all ending because she was unable to get along with the people she worked with. (Tr. 56-58). Clearly Plaintiff's issues with other people are at least arguably beyond "moderate." Thus, on remand, the ALJ should carefully consider the vast evidence of Plaintiff's mental instability and anger issues, and craft an appropriate RFC.

      Plaintiff also raises issues regarding her alleged physical ailments, such as spine and joint problems aggravated by obesity, and abdominal/liver symptoms. On remand, the ALJ should carefully consider Plaintiff's alleged physical impairments, to determine if, as Plaintiff argues, any or all of her physical limitations are "severe".

14

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: October 18, 2021.

                                                    s/ William C. Lee  
                                                    William C. Lee, Judge  
                                                    United States District Court